Washburn, J.
This is 'an application on behalf of -the Avon Beach and Southern Rajlrpad Company, wherein it is sought 10 havp this *562 court grant said company permission to iay its tracks across certain streets in the city of Lorain, at grade, and to prescribe what gates, signals and .other safeguards shall be maintained by said company at said crossings in addition to the signals and safeguards prescribed by statute.
This application is filed under a provision of a law passed in April, 1904, and found in 97 Ohio Laws, at page 546, and which will be referred to hereafter in this opinion as a new law. For convenience sake I shall designate the said company as plaintiff, and the municipal corporation of the city of Lorain as defendant.
Before plaintiff filed its petition, proper notice under said new law was given to the defendant, and the defendant has filed an answer and entered its appearance and participated in the trial of the case, without any further notice than that served upon it previous 1» the filing of the petition.
Before the hearing, and at the request of both parties, I viewed the premises in question. A part of the proposed line has been constructed that is, that part from Grove avenue in the city of Lorain, where the plaintiff’s line connects with the Lorain Street Railway Company, and thence east across all of the streets in question, except Thirteenth avenue. The line so far as it has been constructed is at grade with said streets, and except where it crosses said streets is upon a private right of way, and so far as the rails have been laid poles have been erected and trolley wires strung, and it was the intention of the plaintiff to build on across Thirteenth avenue, crossing the same at its junction with the Globeville road, which is on the west bank of Black river.
It is conceded that the plaintiff received no grant, license or permission from the defendant to lay its tracks across the streets as they are now laid, and after the rails were laid as far as they are now laid, the defendant, through its mayor, stopped further construction of the road, and by agreement of the parties nothing further has been done. After the work was stopped, the plaintiff company made application to the defendant for permission to lay its tracks across said streets, and the defendant, on *563 the advice of its city solicitor, declined to grant such permission, on the theory that it had no authority to grant such right to the plaintiff, it being claimed that the authority to- grant such right was vested in the court, by virtue of said new law'.
The plaintiff claims that it is a railroad, organized under the general railroad laws of Ohio, and that as such, by reason of the provisions of said new law, it should he granted the permission asked for in its petition by this court.
The defendant claims that the plaintiff is not a railroad within the meaning of said new law, and that if it is a railroad within the meaning of said law, it can not be granted the permission it asks until it has acquired from the defendant, either by agreement with the defendant or by condemnation proceedings, the right to cross said streets.
This last claim- is made under the provisions of Sections 3283 and 3284 of the Revised Statutes of Ohio, -which read as follows:
“Section 3283. If it be necessary, in the location of any part of a railroad, to occupy-any public road, street, alley, way, or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or -authorities, owning or having charge thereof, -and the company may agree upon the manner, terms and conditions upon which the same may he used or occupied; and if the parties be unable to- agree thereon, and it be necessary, in the judgment of the directors of such company, to use or occupy such road, street, alley, way or ground, such company may appropriate so much of the same as may be necessary for the purposes of its road, in the manner and upon the same terms -as is provided for the appropriation of the property of individuals, hut every company which lays a track upon any such street, -alley, road or ground shall be responsible for injuries done thereby to private or public property lying upon or near to such ground, which may be recovered by civil action brought by the -owner, before the proper court, at any time within two years from the completion of snch track.
“Section- 3284. A company may, whenever it is necessary in the construction of its road to cross a road or a stream of water, divert the same from its location or bed; hut the company shall, without unnecessary delay, place such road or stream in such condition as -not to impair its former usefulness, and any or all railroads hereafter constructed, which shall cross any *564 avenue or public highway leading from a city of the first or second class to a public cemetery of such city, situated within or without the limits of any such city, shall be constructed so as either to pass under or over such avenue or public highway, at such elevation or ¡depression, as the case may be, as will allow the unobstructed passage of all wagons, carriages, or other vehicles which it may be necessary for any person to use upon such avenue or public highway. ’ ’
If the plaintiff is a railroad company within the meaning of said new law, then the contention of the defendant, that the plaintiff can not build across said streets until it has acquired the right so to do from said defendant, or by condemnation proceedings, is supported by a Hamilton County District Court opinion, Cincinnati Northern Railway v. Cincinnati, 8 Bull., 334, in which it was decided that:
“The right to fix a terminus of a railroad in a city does not imply the power to cross intervening streets without consent or condemnation. ’ ’
And in that case the railroad company was enjoined from crossing the street until it had acquired the right to do so, either by agreement with the municipality or by condemnation proceedings.
Said contention is also supported in the case of Youngstown v. Railway, 3 C. C., 214, in which it is said that:
“The provision of said Section 3284, which declares ‘a company may, whenever it is necessary in the construction of its road to cross a road or a stream of water, divert the same from its location or bed/ does not authorize a railroad company to construct and maintain its road across, a street of a city, without consent of the city authorities or without appropriating the right to do so; but such right of occupancy of a street can be obtained only by agreement with the city authorities or by appropriation, as provided in Section 3283, Revised Statutes. ’ ’
These two circuit decisions are directly in point and should be followed by this court in the absence of authority to the contrary.
I -have found and have been cited to no authorities to the contrary, and unless the new law heretofore referred to supersedes *565 •those sections, the contention of the defendant would appear to be well taken, so far as requiring plaintiff to acquire, by agreement with the defendant or by condemnation proceedings, the right to lay its tracks across said streets, before it can legally build its road across them. u
It is true,-that my attention has been called to a decision of Judge Boynton in Little Miami Ry. v. Greene County, 31 O. S., 338, 346, where, in discussing said Sections 3283 and 3284, he treats the former as relating to the uke of the street or any part thereof by a railroad company running along a highway, and Section 3284, 'as providing for a railroad company using a street by building across the same; but that was not a point decided in that case, and Cincinnati Northern Ry. v. Cincinnati and Youngstown v. Railway, supra, were decided, one of them seven years after the above decision of Judge Boynton and the other more than ten years thereafter, and I believe it is the duty of this court to follow said circuit court decisions rather than the obiter dictum of the judge deciding the 31st O. S. case, in view of the fact that the circuit court judges must have had that before them when they decided those cases.
Besides Section 3283 was discussed by the Supreme Court as if it applied to crossings in the following cases: Railway v. Defiance, 52 O. S., 262; L. S. & M. S. Ry. v. Elyria, 69 O. S., 414. See, also, Zanesville v. Fannen, 53 O. S., 605.
The new law above referred to, makes no mention of any other laws of the state; it amends none, and does not in terms repeal any. It provides that:
‘ ‘ Except as in this act elsewhere provided, all crossings hereafter constructed, whether of highways by railroads, or of railroads by highways, shall be above or below the grade thereof. ’ ’
And due notice having been given—
“The court of common pleas shall thereupon have jurisdiction of. the parties and the subject matter of such petition, and may proceed, summarily or otherwise, and upon such notice as it shall deem sufficient, to examine the matter, either by evidence, by reference to a master commissioner or otherwise; and if satisfied that such construction is reasonably required to ae *566 commodate .the public, or to avoid excessive expense, in view of the small amount of traffic on the highway or railroad, or in view of the difficulties of other methods of construction, or for other good .and sufficient reasons, then it shall make an order or orders permitting such crossing at grade to be established; and it may, in such order, in its discretion, prescribe what gates, signals, or other safeguards shall be maintained by the railroad company, in addition to the signals and safeguards prescribed by statute.”
Said law also provides that:
“Such railroad company may exercise the power contained in its charter and the general laws, for altering the grade and location of highways in order to avoid grade crossings. ’ ’
The power above referred to has reference to Section 3284 quoted above, and a fair construction would seem to be, that the new law was not intended to supersede said section; but that it was intended that a railroad company should be required to acquire the right in the manner provided in Section 3284 to cross a street, and in addition thereto that it should be required to obtain the consent or permission of the common pleas court before it could exercise that right by constructing its road across a -street at grade.
I do not think that it was'the intention-of the Legislature, by said new law, to take away from, municipalities the right given them in Section 3283, to agree upon the manner, terms and conditions upon which a railroad might cross its streets, except so far as -they are not permitted to agree to a grade crossing. Neither was- it intended to invest the common pleas court with authority to grant a railroad the right to lay its tracks across a street in -a municipality against the protest and objection of the municipality, without appropriating the right to do so by condemnation proceedings.
If, before this new law, a railroad could not cross a street in a city without acquiring the right to do so, either by agreement with the city or by condemnation proceedings, then it seems to me that it can not -do so now. The new law, in this particular, should he strictly construed (Delaware, L. & W. Ry. v. Buffalo, *567 158 N. Y., 266, quoted with approval in L. S. & M. S. Ry. v. Elyria., 69 O. S., 414, 434).
This construction of the new law is fortified when we remember that it gives to the common pleas court -the right to permit a city to construct a new road or street across a railroad right of way at grade, to exactly the same extent and in the same manner that the court can permit a railroad company to build at grade .across a street.
It will hardly be contended that this new law vests in the court the authority to permit a city to construct a highway across, the right of way of a railroad without said city having acquired the right to do so by condemnation proceedings or otherwise, as provided by law.
That a city can not open a new street across a railroad without acquiring the right to do so by agreement or by condemation proceedings, see C., H. & D. Ry. v. Troy, 68 O. S., 510. See, also L. E. & W. Ry. v. Hancock County, 63 O. S., 23.
I think, however, that a fair construction of said laws would not require the railroad company to acquire the right to lay its tracks across a street by agreement or by condemnation proceedings- before it was granted permission by the common pleas court to construct >a grade crossing.
In other words, permission, to construct a grade crossing may be granted by the common pleas court, conditional upon the railroad company’s acquiring, either by agreement or condemnation, the right so to do, and hence the contention of the defendant that permission can not be granted in this case at this time is not well taken, provided the plaintiff is a railroad within the meaning of said new law.
But defendant -contends that the plaintiff is not a railroad within the meaning of said new law. It will be noticed that said new kuw’refers only to “railroads”, without saying whether that term includes electric railroads, interurban railroads- or street railroads. It will be noticed also that th-e law seeks to absolutely prohibit grade crossings, except where for special reasons the court shall decree otherwise.
*568 It would seem that the Legislature here intended to legislate against the kind of railroads which .are especially dangerous, when built and operated at grade across highways, and that would mean steam railroads. .
It manifestly can not apply to street railroads, that is, such as are built upon and run along the streets, for the purpose of facilitating travel therein. If they are permitted to operate at grade along streets, there would be no sense in prohibiting them from crossing intersecting streets at grade. The same reasons apply to a large extent to interurban electric railways, for it is a matter of common knowledge that they are operated upon streets and highways, both in and out of municipalities, and their business requires frequent stops, and their cars are much easier and -more quickly stopped than steam ears, and there is very much less danger in their operation at grade across, streets and highways than there is in the operation at grade of steam railroads across streets and highways.
Most of the law;s in reference to railroads are found in ■the Revised Statutes from Section 3270 to Section 3436. And the laws applying to all kinds of railroads, such as street railroads, interurban railroads and electric railroads, is found from Section 3437 to Section 3443-18; and in Section 3309a it is provided that:
“Nothing in this section or in the sections of the Revised Statutes relating to railroad companies, prior to Section 3437, other than in Sections 3287,' 3288 and 3289, shall be construed as affecting street railroads. ’ ’
In the statutes, .all the laws in reference to interurban and electric railroads are placed under the classification referring to street railroads.
As showing that the Legislature treats steam railroads as being in one class, and all other railroads as being in another class, generally referred to as street railroads, Section 2780-17 is important. The Legislature there provided that for purposes of taxation, steam railroads shall be considered as one class, •and that all other railroads, such ais street .and interurban railroads, shall be taxed as another class.
*569 It is true that under Section 3310-1, a steam railroad is given authority to use electricity as a motive power in the propulsion of ears. But the Legislature in defining railroads and street railroads, for the purpose of taxation in Section 2780-17, places ■the distinction between them upon the business they are engaged in, and provides that a company, “when -engaged in the business of -operating a street, suburban or interurban railroad, either wholly or partially within this state, whether the cars used in su-ch -business be propelled by animals, steam, cable, electricity, or other motor, shall be deemed -to be a street, -suburban or other -interurban railroad.”
It is said that (the -charter of the plaintiff gives it a right to operate a steam railroad, hence it is a steam railroad, and that this court can not receive or consider evidence other than the provisions of said charter, in order to determine whether or no> it is a steam railroad.
Interurban electric railroads operate in this state under steam railroad charters, and conduct the business -of interurban railroads and of street railroads under such charter; and steam railroads are granted the right to- use electricity in the propulsion of -their ears the same as -electric railroads. Both street railroads and steam railroads are given the right of eminent domain, and the right to carry passengers, express matter and freight, and to construct a double or single track railroad, with switches, tu-rn-outs, etc.; in fact, their powers in many particulars are alike; but at the same time the Legislature has been careful to keep the laws in reference to each separate and distinct; ■and has enacted, that whatever their charters are, they shall be judged as to what they really are, for purposes of taxation, by the m-anner of their construction and operation, -and the character -of the business they engage in (2780-17).
The charter of a company is prepared by a company itself; it asks permission to engage in a certain business in a certain m-anner, and the permission is granted. It would seem unjust to permit a company to ask for and receive permission to construct and operate and transact -the business -of a steam railroad, and after it is constructed and operated and is engaged in the *570 business of an i-nterurban railroad (the two kinds of railroads being separate and distinct under the laws of this state), to permit it to repuire that it shall be judged by what it as-feed permission to do, and not by what it in- fact is doing. The Legislature, for purposes of taxation, has enacted -that, railroads shall be judged by what they are doing, rather than by what they asked permission to do, and I do not see any valid objection to the courts .applying the same rule.
Plaintiff will not -claim that it should be taxed as a steam railroad, nor that the fellow-servant statute, applicable -to steam railroads, is applicable to it. It hardly seems proper to permit a company to do one thing under the guise of doing something else, -and to claim the rights and benefits of one class of railroads, and escape the disadvantages and liabilities of -that class.
As to the' question whether the court cam consider other evidence than the charter of a company to determine what kind of a company it is, I will slay that I have not been cited to -any ease directly in point, and in the very short time I have had to consider this case I have found none; buit in a ease like this, in view of -the legislation of this state, -above referred to, it seems to me fair to- say, that the kind of business- in which a company i-s engagied, and the manner of operating its road, is more important than the language -of the charter -of the company, and I have concluded, therefore, to consider the evidence which was objected to at the time of the trial.
The word “railroad” as used in the statute, -and- as it is used in the new law in question h-as been construed ’by the Supreme Court. 'Section 3208 provides that—
“A person who performs labor or furnishes materials- for or in the construction of any railroad * * * shall have a lien for the payment of the same upon such railroad,” etc.
And in 1898, a railroad to be operated by electricity, partly in one city and through the country and on the streets in another city was constructed, and -certain persons who performed labor and furnished materials in the construction of said railroad sought to perfect -a lien under said ‘Section 3208, and it was claimed that -the word “railroad” -as used therein did not apply
*571 to such a railroad as was then constructed, and our Supreme Court decided in Massillon Bridge Co. v. Iron Co., 59 O. S., 179, that:
“The statutes of this state relating to railroads .are separate and distinct from those relating to street railroads, and the word ‘railroad’ in Section 3208 * * * does not include street railroads. ’ ’
And it was stated in the opinion, page 186, that:
“Sections 2501 to 2505d, inclusive, are all prior to Section 3437, and all affect street railroads; but they do not relate to railroads, thus showing that the General Assembly did not regard even interurban street railroads as being included within the word ‘railroad.’ ”
In C., L. & A. Elec. St. R. R. v. Lohe, 68 O. S., 101, the Supreme Court decided that:
“An interurban electric railroad is classed as a street railroad by the statutes of this state.”
And in the opinion, page 109, i-t is said:
“The legislation in this state as to railroads and street railroads has been kept separate «and distinct. Interurban railroads, such as the one in question in this case, «are classed by the General Assembly «as street railroads. Section 2780-17, Revised Statutes.
“The construction and operation of such railroads-is authorized by the act of May 17th, 1894 (91 O. L., 285), and carried into Bates’ Statutes as Sections 3443-8 to 3443-13.”
Section 6 of that act is as follows:
“Such companies shall be subject to the same regulations now provided for street railroads, in so far as- the same are applicable, and shall have all the powers, in so far as they are applicable, that other street railroad companies have.”
Section 3333-1 is a section similar to the one now being construed, «and that provided—
“Where it becomes necessary (outside of the corporate limits of a city or village) for the track -of one railroad company to cross the track of another railroad company, unless the manner *572 of making such crossing shall be agreed to between such companies, it shall- be the duty of the court -of common p-leas of the -county wherein su-eh crossing is located. * * * to ascertain and define- by its decree the mode of such crossing, ’ ’ etc.
That -section was construed on November 23, 1903, by the Circuit Court of Darke County (Dayton & Union Ry. v. Traction Co.), and one of the judges participating in that decision is now one of the judges of the Supreme Court. It was there held that;
“Steam railroad -companies and electric railway companies are -classified -and recognized as separate and distinct from each other by the statutes of Ohio; and statutes relating t-o and regulating the former are inapplicable to the latter, unless an intention -to the contrary clearly appears.
“A steam railr-o-ad company can- not invoke the power of the common pleas count under Section 3333-1, Revised Statutes, to ascertain and define the manner in which an interu-rban electric railway ¡company may cross its right of way, as the statute is applicable to steam railroad companies only.” 4 C. C.—N. S., 329.
On page 335 the court uses this language;
“On the same day that the special -act under which this proceeding is sought to be prosecuted was passed, the Legislature passed another act conferring upon -electric railroads the power of eminent domain. The railroads had had that power from their inception, and if an elective railroad is identical that legislation would be superfluous. The Legislature clearly understood that they were different roads, 'and we are driven to the conclusion that the word ‘railroad’ in this statute has a fixed legal significance. It means a steam commercial road and nothing else, and whenever it is used in a statute that meaoiing must he given to it unless it clearly appears that some other meaoiing is ioiieoided.”
The railroad -company in question in the above case, so far -as can be learned from the -opinion, was very similar to the railroad company which is plaintiff in the ease -at bar, and without deciding what kind of a railroad the plaintiff company is, whether an -electric railroad, an interurban railroad or a street 'railroad, -the above decision is authority f-or holding that said new law does not apply to it, unless it is a steam railroad.
*573 Is the plaintiff a steam railroad? In the petition of the plaintiff this language is used: “Tour petitioner further represents that it expects to use electricity as a motive power in the propulsion of its cars,” and the proof .at the hearing shows, that so far as it has been constructed it has been constructed with a view to using electricity as a motive power, and' in a manner similar to interurban electric railroads.
The testimony shows that it intends to purchase its power from the Late Shore Electric Railroad Company, and that its chief connections are between the Late Shore Electric Railroad Company and the Lorain Street Railway Company, ,and that its private right of way between the streets which it proposes to cross is but 15 feet wide.
It is true that its charter provides that its westerly terminus shall be in Oberlin; but the proof shows that there have been no surveys west of its connection with the Lorain Street Railway Company, and no steps taken' whatever indicating that i't will ever he built west of said point.
It is also true, that by the charter of the plaintiff it is granted the right to use steam as a motive power; but the circumstances and surroundings are such that it is very plain to the court that such is not its intention. Its connection on the west is with the Lorain Street Railway Company, which is distinctly a street railway company, organized and operated as such, and its connection on the east is with the Late Shore Electric Railroad Company, which the evidence shows is not a steam railroad, but is engaged in the business of conducting what is generally understood to be an electric interurban railroad. It runs through tbe country on private right of way, and in the various cities it operates on the streets under franchises the same as street railroads, and the testimony shows that it is tbe intention of the plaintiff, by the construction of the proposed road, to form a connecting link between these railroads, and to use the cars of these railroads upon its line, and to use a common source of power in the propulsion of its ears.
I find from the testimony, that in the business which the plaintiff is to transact, and in- the manner of transacting that *574 business, and in the manner of the operation of its road, it is very much like those roads with which it connects, and judging the' plaintiff by its application, by its construction so far, and by its contemplated construction as declared by its officers and agents, and by its connections and the character of the business it intends to conduct, and the manner in which it'intends to transact the same, and by its situation and surroundings, I find that it is not intended to engage in the business of conducting a steam railroad; but that it intends to engage in the business ■of operating a suburban or interurban railroad; and construing said new law to apply only to steam railroads, this court has no authority to grant the application of the plaintiff; and the prayer of the petition will therefore be denied.
M. B. & H. H. Johnson, Thomas U. Hogsett, E. G. efe H. G. Johnson and G. A. Beseh, for the railroad company.
W. L. Hughes, Thompson, Glitsch & Ginninger, for the city of Lorain.
Not being a'steam railroad, the plaintiff is authorized to build its road at grade across the streets in question without permission from this court, provided it acquires the right to do so under the laws of Ohio, other than said new law.
It is further ordered that the plaintiff pay the costs of this proceeding.
Exception's will be noted for the plaintiff, and also a bond fixed in case it desires to appeal.